IN THE UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| **REUBEN MITCHELL** ) | |
| ) | |
| ) | Case No.:_____ |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **BOTTLING GROUP, LLC d/b/a PEPSI** ) | |
| **BEVERAGES CO.** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT
### (Jury Trial Demanded)

Plaintiff, Reuben Mitchell, brings this action against Defendant Bottling Group, LLC d/b/a Pepsi Beverages Co. (hereinafter "Pepsi"), for racial discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a), and 42 U.S.C. Section 1981.

## NATURE OF THE ACTION

1. Defendant operates a large bottling plant that exclusively bottles Pepsi-brand

1

soft drink products in Gainesville, Georgia.

2. Plaintiff is a black male, 47 years of age. Plaintiff's official title at the Gainesville Pepsi plant was "Manufacturing Senior Associate." However, this position is more commonly referred to at the plant as the Warehouse Manager position, so it will be referred to as such for the remainder of this pleading.

3. Plaintiff's job was to supervise warehouse employees in the Gainesville plant. The workforce at the plant is about 95% white.

4. Plaintiff was subject to racial slurs and harassed by fellow employees throughout his employment at the Gainesville plant. Plaintiff informed his supervisors of this harassing conduct directly, as well as informed corporate Pepsi through Pepsi's "Speak up Hotline." However, Plaintiff's concerns were never addressed.

5. Plaintiff was hit in the face by a white male employee that he was supervising. Prior to being hit in the face, Plaintiff previously told his supervisors that this employee was exhibiting extremely aggressive and threatening behavior towards him on the basis of race.

6. Plaintiff was suspended without pay for two weeks after being hit in the face

by the white male employee, whereas the white male employee was allowed to continue working and received no discipline. Plaintiff was later terminated about two weeks later with no explanation given as to why, which gives rise to this action.

7. As a result of being suspended without pay for two weeks, and later terminated, Plaintiff had his vehicle repossessed, was evicted from his apartment, and lost his father's ashes which were kept in an urn during the eviction.

8. Plaintiff, a grown man of 47 years of age, was then forced to move back to Knoxville, Tennessee to live with his family, and is now working at a job making almost half the salary he made as a Warehouse Supervisor at Pepsi.

9. Plaintiff brings his claims individually, for racial discrimination, hostile work environment and retaliation, under the Civil Rights Act of 1964, as well as under 42 U.S.C. Section 1981.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. Sections 1331 and 1343(a)(4), as well as 42 U.S.C. Section 2000e-5(f)(3).

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a

substantial part of the events or omissions leading to this claim occurred while Plaintiff performed work at the Pepsi plant located at 2220 Centennial Drive, Gainesville, GA 30504, which is in Hall County. Therefore, venue is proper in the Gainesville division of the Northern District of Georgia.

12. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

13. Plaintiff, Reuben Mitchell, was a resident of Hall County, Georgia throughout his employment with Defendant. However, Plaintiff currently resides at 3826 Tiberius Road, which is in Knoxville, Tennessee.

**Defendants:**

14. Defendant, Pepsi, is a foreign corporation with its principal place of business being: Pepsico North America Beverages, 1111 Westchester Avenue, White Plains, New York 10604.

15. The Pepsi plant where Plaintiff worked, and where the racial discrimination described in this pleading took place, is located at 2220 Centennial Drive,

Gainesville, Georgia 30504, which is in Hall County.

16. Upon information and belief, Pepsi employs over 270,000 employees world-wide. Pepsi employs over 500 employees at the Gainesville plant where Plaintiff worked as a Warehouse Manager and suffered the discrimination described in this complaint.

## ADMINISTRATIVE PROCEDURES

17. On December 5, 2016, Plaintiff filed his charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

18. On September 28, 2017, the EEOC issued Plaintiff a Right to Sue letter, advising he was able to commence suit within 90 days of receipt of the letter.

19. Plaintiff filed the complaint in the instant case on December 27, 2017, which is within 90 days of his receipt of his right to sue letter.

20. Therefore, Plaintiff has exhausted his administrative remedies, and this lawsuit is timely.

## STATEMENT OF FACTS

21. Plaintiff, a black male, was employed with Pepsi for approximately four years as a Warehouse Associate, in their Tennessee bottling plant. Plaintiff then received a

promotion to Manufacturing Senior Associate (also known as the Warehouse Supervisor position), and was transferred to the plaint in Gainesville, Georgia.

22. The job requirements for Warehouse Supervisor position was that the candidate: have previous experience in consumer packaged products or a related industry, have a flexible schedule and be willing early mornings, evenings, and/or weekends, and have the ability to work in a high-speed manufacturing environment.

23. Plaintiff was well qualified for the Warehouse Supervisor position in Gainesville due to: his years of experience working in Pepsi's Tennessee plant which was a high-speed manufacturing environment, his flexible schedule, his familiarity with Pepsi's manufacturing practices and procedures, and positive reviews he received from his supervisors indicating his suitability for higher management.

24. Plaintiff relocated to the Gainesville, Georgia plant for the new job. Plaintiff was the only black supervisor in the Gainesville plant which is 95% white.[1] There were no minorities of any race in supervisory positions at the Pepsi warehouse besides Plaintiff.[2]

---

[1] Upon information and belief, only about 10 of the employees at the plant are black or Hispanic. This despite Gainesville's close proximity to Atlanta, Georgia, a predominately black city.

[2] According to estimates, the city of Gainesville, Georgia itself is 15.2% black, and 42.4% Hispanic. See Demographics Estimate of Gainesville, Georgia (http://www.city-data.com/city/Gainesville-Georgia.html).

25. Throughout his employment, the employees would openly make racial slurs towards Plaintiff, such as calling him a "nigger" to his face, on a constant basis. The would also assert that they could not take orders from a "nigger" and would routinely derogate his authority.

26. This hostile and racially charged behavior made it difficult for Plaintiff to perform his duties and greatly affected the nature of the job. However, Plaintiff still persevered and excelled in his employment due to his strong work ethic, despite the constant racial attacks.

27. Plaintiff reported these racial slurs numerous times to his supervisors John Sewell, Warehouse Manager, and Wade Hansert, Facility Manager (highest ranking supervisor at the plant).[3]

28. Plaintiff also made a complaint to Pepsi's "Speak Up Hotline", a corporate number which purportedly exists to allow employees to report instances of discrimination without reprisal. In his complaint to the hotline, Plaintiff described the nature of the racial slurs and aggressive behavior of the employees which were

---

[3] As mentioned previously, Mr. Mitchell's official title is "Manufacturing Senior Associate", however his position is more commonly referred to at the plant as Warehouse Supervisor. John Sewell was the Warehouse Manager, which is a higher level rank than Mr. Mitchell was as Warehouse Supervisor. Wade Hansert, Facility Manager, oversaw the entire facility, which includes the warehouse, office workers, and all other staff.

made on the basis of race.

29. No action was taken by Pepsi as a result of Plaintiff going to his supervisors or the Pepsi Speak Up Hotline.

30. On June 2, 2016, Mr. Mitchell was approached aggressively by a white male employee named Andrew Upshaw, who warned Mr. Mitchell not to write him up for any work issues, called him racial slurs such as "nigger", and got directly in Plaintiff's face such that their faces were almost touching.

31. During this incident, Plaintiff stepped backwards to diffuse the situation, but the employee again got directly into his face. This incident was witnessed by a black male employee, Augustus Thorpe.

32. Plaintiff reported the incident to Pepsi the same day via e-mail, and advised them also that Augustus Thorpe was a witness. Plaintiff's supervisors responded to the e-mail, asking for additional details, which shows they were aware of the incident. However, Pepsi took no action against the Andrew Upshaw. That same day, a few hours later, Andrew Upshaw hit Mr. Mitchell in the face. Mr. Mitchell again reported the assault to Pepsi management at the plant.

33. The next day Mr. Mitchell arrived at work, and saw Mr. Upshaw working at

the plant. Mr. Mitchell asked his supervisors why the Mr. Upshaw was still at the plant, since he reported the assault and felt as though he was in danger. Wade Hansert, Facilities Manager, and Will Livey, Human Resources Associates, then suspended Mr. Mitchell without pay for two weeks, and allowed Mr. Upshaw, the white male employee who attacked him to continue working.

34.   Two weeks later after being suspended, Mr. Mitchell was terminated from Pepsi with no reason stated as to why.[4]

35.   After his termination, Plaintiff was replaced by Shane Harkins, a white male, who filled his Warehouse Supervisor position. Mr. Harkins was previously a Delivery Supervisor, but was moved into Plaintiff's Warehouse Supervisor job after Plaintiff was terminated.

36.   As a result of being suspended without pay and then terminated, Plaintiff was evicted from his apartment, had his vehicle repossessed, was forced to move in with family in Tennessee, and lost his father's ashes who died many years ago.

37.   Around July 2016, after moving back to Tennessee, Plaintiff received a call

---

[4] Andrew Upshaw is no longer employed by Pepsi. Mr. Upshaw resigned a few weeks after the incident where he hit Plaintiff in the face. However, it is believed no disciplinary action was taken towards him, as when asked about what happened to him, management advised the employees "he just left".

from Wade Hansel asking him to come back to work, saying he should not have been terminated. Plaintiff then drove is car four hours from Knoxville, Tennessee, to the Gainesville plant, to start back working at his job.

38. When Plaintiff arrived at the plant, he saw Mr. Hansel outside, who advised him that he "Just spoke with HR [human resources], and they said I can't let you back in the facility." Plaintiff was then escorted off the property by law enforcement, and told if he came back to the property again he would be arrested.

39. Plaintiff is now employed at a different job, making almost half the money he was making as a supervisor at Pepsi.

## FIRST CAUSE OF ACTION
## Racial Discrimination in Violation of Title VII and Section 1981

40. Plaintiff realleges each paragraph of this Complaint, and incorporates the previous paragraphs with the same force and effect.

41. Plaintiff brings his First Cause of Action for Retaliation, under Title VII of the Civil Rights Act of 1964 and Section 1981.

42. Plaintiff was the victim of continuous racial slurs by his white male employees because of his race.

43. Plaintiff was hit in the face by Andrew Upshaw, a white-male, and suspended without pay for two-weeks, whereas Mr. Upshaw was allowed to keep working and received no discipline. Plaintiff was also then terminated with no reason given as to why.

44. Plaintiff was unlawfully discriminated against by Pepsi on the basis of his race, and requests that this Court grant him relief.

## SECOND CAUSE OF ACTION
**Hostile Work Environment in violation of Title VII of the Civil Rights Act**

45. Plaintiff realleges each paragraph of this Complaint, and incorporates the previous paragraphs with the same force and effect.

46. Plaintiff brings his Second Cause of Action against Defendants under the Civil Rights Act of 1964 for hostile work environment.

47. Plaintiff was subject to constant racial slurs and harassment on the basis of his race, at the hands of employees at Pepsi. Plaintiff reported the racial hostility and harassment to his supervisors directly, and also to the Pepsi Speak Up Hotline. Pepsi was aware of the hostile environment, however no action was taken.

48. Following this, Plaintiff was hit in the face by Andrew Upshaw, suspended

for two weeks without pay, and then terminated.

49.  The nature of this conduct was severe and lasted throughout his employment with Pepsi at the Gainesville plant, ultimately culminating in violence to Plaintiff.

50.  Pepsi is vicariously liable for the racially hostile environment it fostered and encouraged by not taking action against the perpetrators, which only served to embolden their racial attacks against Plaintiff. Pepsi is also liable for terminating Plaintiff who opposed the hostile work environment on the basis of his race.

### THIRD CAUSE OF ACTION
**Retaliation in Violation of Title VII and Section 1981**

51.  Plaintiff realleges each paragraph of this Complaint, and incorporates the previous paragraphs with the same force and effect.

52.  Plaintiff brings his Third Cause of Action for Retaliation, under Title VII of the Civil Rights Act of 1964 and Section 1981.

53.  Plaintiff was unlawfully retaliated against after reporting racial discrimination and opposing the practices of Pepsi described in this complaint.

54.  Plaintiff made reports to his supervisors John Sewell and Wade Hansert, as well as to the Pepsi Speak Up Hotline, about the racial slurs and abuse of the

employees, and being hit in the face by Andrew Upshaw.

55. The next day after reporting being hit in the face by Andrew Upshaw and being called a nigger by him, Plaintiff was suspended for two weeks, and then later terminated.

56. The short time period between reporting of the racial discrimination and the suspension and termination, indicates Plaintiff was retaliated against for opposing the physical attacks and racial slurs he experienced because of his race.

## PRAYER FOR RELIEF

Therefore, Plaintiff respectfully requests that this Court grant the following relief:

a. Order defendant to pay equitable, monetary relief, compensatory, liquidated and punitive damages, in an amount to be proved at trial;

b. Order Defendant to make Plaintiff whole, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including but not limited to: damages for emotional pain and suffering, anxiety, stress, depression, and humiliation, in an amount to be

determined at trial;

c. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities to minorities which eradicate the effects of its past and present unlawful employment practices;

d. Order an award of backpay to Plaintiff;

e. Order an award of frontpay to Plaintiff;

f. Order an award of prejudgment and post-judgment interest;

g. Order an award of costs and expenses of this action with attorney's fees;

h. Order such other relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: December 27, 2017

        Respectfully submitted,

        **s/ Brandon A. Thomas**
        **BRANDON A. THOMAS**
        **GA BAR NO.: 742344**
        The Law Offices of Brandon A. Thomas, PC
        1800 Peachtree Street, N.W., Suite 300

Atlanta, GA 30309
Tel: (404) 343-2441
Fax: (404) 352-5636
brandon@brandonthomaslaw.com